UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| AMIR MESHAL,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CHRIS HIGGENBOTHAM, *et al.,*<br><br>　　　　　　Defendants. | No. 09-cv-2178 (EGS) |

## **MOTION FOR LEAVE TO CONDUCT LIMITED EXPEDITED DOE DISCOVERY**

Plaintiff hereby moves, pursuant to Rules 26 and 45, Fed. R. Civ. P., for an Order (a) allowing Plaintiff to serve a subpoena for limited expedited discovery on the non-party Federal Bureau of Investigation ("FBI"); and (b) requiring the FBI to respond to the subpoena within fifteen (15) business days of the date of service. Plaintiff seeks leave of the Court to serve a Rule 45 subpoena on the FBI for the production of documents identifying the true names and identities of Doe Defendants 1 and 2 whom Plaintiff has good cause to believe are current or former FBI agents. Plaintiff seeks this information for the limited purpose of amending the Complaint and prosecuting this action.[1]

### BACKGROUND

Plaintiff, an American citizen, brings this suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for compensatory damages for violations of his rights under the Fourth and Fifth Amendments to the U.S. Constitution and

---

[1] In an effort to avoid unnecessary motion practice, Counsel for Plaintiff requested that the U.S. Department of Justice (DOJ) provide the true full names and identities of Doe Defendants 1 and 2. DOJ refused to provide that information.

pursuant to the Torture Victim Protection Act of 1991, 28 U.S.C. § 1350, note ("TVPA"). Complaint ¶¶ 5-7. The Complaint, in short, alleges that the Defendants directed, conspired to effect, and/or actively and substantially participated in Plaintiff's illegal detention, rendition, and interrogation in the Horn of Africa, where he was held mostly incommunicado and without judicial process from January to May of 2007. The Defendants all refused to provide Plaintiff with their true names and identities during their more than thirty interrogations of Plaintiff, including interrogations in which Plaintiff was threatened with torture, forced disappearance, and serious harm. *Id.* ¶ 3.

This motion seeks the true names and identities Doe Defendants 1 and 2. Based on information provided at a district court hearing in another case, Plaintiff has ascertained the true names and identities of the two named defendants—Chris Higgenbotham and Steve Hersem—and has confirmed that both were Supervising Special Agents of the FBI at the time of the events giving rise to this action. Complaint ¶¶ 48-52, 55-56. With respect to Doe Defendants 1 and 2, Plaintiff has been able to determine in good faith that they are FBI agents, but not their individual identities. Doe Defendants 1 and 2 refused to provide Plaintiff their full names or titles even as they interrogated him numerous times, and Plaintiff had (and has) no other means of obtaining their true identities. Plaintiff, however, has good cause to believe that Doe Defendants 1 and 2 are current or former employees of the FBI based on disclosures by Doe Defendants 1 and 2, actions taken by Doe Defendant 1 in Kenya, television footage of Doe Defendant 1, and publicly available information describing the FBI's activities in the Horn of Africa region during the relevant period. Complaint ¶¶ 22-25, 48, 53, 60, 119-20, 123, 142-43.

As set forth more fully in the Complaint, since the 1998 bombings of the U.S. Embassies in Kenya and Tanzania, the FBI has maintained a significant presence in the Horn of Africa.

Complaint ¶¶ 22-25. The FBI Office of International Operations and the FBI Legal Attaché in Nairobi coordinated the deployment of FBI officers to the region following the attacks. *Id.* ¶ 23. Since at least 2004, the FBI has also been involved with the U.S.-established Combined Joint Task Force in the Horn of Africa (CJTF-HOA) in training local law enforcement in counter-terror tactics and has been proximately involved in the apprehension, detention, and interrogation of terrorist suspects in the region. *Id.* ¶ 25.

In November 2006, Mr. Meshal traveled to the Somali capital of Mogadishu to enrich his study of Islam after the country's volatile political situation had largely stabilized. Complaint ¶¶ 17, 21. On or about January 24, 2007, Mr. Meshal was detained along the Somalia-Kenya border after fleeing the eruption of hostilities in Mogadishu. *Id.* ¶¶ 30-34, 36. Mr. Meshal was subsequently illegally detained in Kenya and interrogated repeatedly in day-long sessions by three U.S. officials, Defendant Higgenbotham, Defendant Hersem, and Doe Defendant 1. *Id.* ¶¶ 50, 52-53, 55-56, 59-63, 65, 67-68. During these interrogations, all of which were conducted without access to counsel, Defendant Higgenbotham and Defendant Hersem, *inter alia*, threatened Mr. Meshal with forced disappearance, torture, and other serious harm. *Id.* ¶¶ 3, 60, 71, 73-75. On or about February 10, 2007, Plaintiff was subsequently forcibly and illegally rendered from Kenya to Somalia and Ethiopia, where he was subjected to more than three additional months of illegal detention at the direction, behest, and/or with the active and substantial participation of the Defendants. *Id.* ¶¶ 12-14, 90-128, 130-131, 137-138. In Ethiopia, Doe Defendant 1 and Doe Defendant 2 further interrogated Mr. Meshal and directed, authorized, and/or actively and substantially participated in the continuance of his illegal detention in that country. Complaint ¶¶ 112-127, 130-131, 137-138. Defendant Higgenbotham, Defendant Hersem, and Doe Defendants 1 and 2 also prevented and/or actively and substantially

3

participated in preventing Mr. Meshal from making phone calls and securing access to legal representation. *Id.* ¶¶ 60, 71, 82, 102, 123, 126. During this period, Mr. Meshal was never charged with a crime, never granted access to counsel, and never presented before a judicial officer. *Id.* ¶ 2.

## ARGUMENT

Plaintiff seeks limited expedited discovery regarding the true identities of Does 1 and 2, a form of discovery routinely ordered by courts. *See, e.g.*, *Warner Bros. Records, Inc. v. Does 1-6*, 527 F. Supp. 2d 1, 3 (EGS) (D.D.C. 2007) (granting limited expedited discovery as to the true identities of the defendants because such information was "crucial to the prosecution of plaintiff's claims" and "the litigation [could not] go forward" without it); *see also LeFace Records LLC v. John Does 1-51*, No. 08-cv-1569 (CKK), 2008 WL 4517178, at *1 (D.D.C. Oct. 6, 2008); *Warner Bros. Record Inc. v. Does 1-14*, 555 F. Supp. 2d 1, 1 (RJL) (D.D.C. 2008). Courts have consistently recognized the need for Doe discovery where, as here, a plaintiff's civil rights suit cannot go forward without the limited discovery that would enable the plaintiff to identify the named defendants. *See Saffron v. Wilson*, 70 F.R.D. 51, 56 (D.D.C. 1975) (denying motion to dismiss *Bivens* suit "before plaintiff has had an opportunity to engage in discovery which could disclose the exact identity of the officers whom plaintiff presently is able to partially identify"); *Chung v. U.S. Dept. of Justice*, No. 00-cv-1912 (TFH), 2001 WL 34360430, at *6-8 (D.D.C. 2001), *aff'd in part, rev'd in part on other grounds, and remanded*, 333 F.3d 273 (D.C. Cir. 2003) (denying motion to dismiss *Bivens* suit where "discovery could reasonably be expected to help [plaintiff] identify [defendants] by name, permitting him to properly perfect service on them").

There is, in short, broad agreement that a district court should grant limited discovery to allow a Plaintiff to obtain information necessary to identify Doe defendants. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (finding error in the dismissal of a § 1983 action against unnamed defendants in light of the possibility that their identity could be ascertained through discovery); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997) (same); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (same); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (same). Courts therefore routinely allow a plaintiff to conduct such limited discovery in advance of a conference under Rule 26(f), Fed. R. Civ. P., upon a showing of good cause. *See Warner Bros. Records, Inc.*, 527 F. Supp. 2d at 1 ("The Court finds that plaintiffs have made a showing of good cause for the discovery they seek, as the information is not only relevant but crucial to the prosecution of plaintiffs' claims."); *LeFace Records LLC*, 2008 WL 4517178, at *1 ("The court finds that good cause exists for Plaintiffs' discovery because Defendants must be identified before this suit can progress further."); *see also, e.g., Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (collecting cases); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001).

The facts pled in Mr. Meshal's Complaint demonstrate the requisite good cause. Mr. Meshal has specifically identified four defendants whom he claims violated his rights under the U.S. Constitution and the Torture Victim Protection Act of 1991. Each defendant provided Mr. Meshal only with a first name: "Chris," "Steve," "Tim," and "Dennis." Complaint ¶¶ 48, 119. Although Mr. Meshal has confirmed that "Chris" and "Steve" are FBI Supervising Special Agents Chris Higgenbotham and Steve Hersem, respectively, he is unsure of the true full names and identities of Doe Defendant 1 ("Tim") and Doe Defendant 2 ("Dennis"). For the reasons

5

stated below, and as set forth more fully in the Complaint, Plaintiff has good reason to believe that Doe Defendants 1 and 2 are current or former employees of the FBI.

First, Plaintiff has been able to establish that two of Mr. Meshal's four interrogators in Kenya were FBI Supervising Special Agents. Two interrogators identified themselves as "Steve" and "Chris" and told Mr. Meshal that they had previously interrogated Daniel Maldonado, the defendant in *United States v. Daniel Joseph Maldonado*. Complaint ¶¶ 49, 55-56. The transcript from Mr. Maldonado's preliminary detention hearing in the United States District Court for the Southern District of Texas indicates that FBI Supervising Special Agent Chris Higgenbotham and FBI Supervising Special Agent Steve Hersem interrogated Mr. Maldonado in Kenya. See Exhibit 1 (Partial Tr. of Preliminary Detention Hearing 3-4, *United States v. Daniel Joseph Maldonado*, No. 4:07-mj-00125-1 (S.D. Tex. 2007) (dkt. no. 16)).[2] "Chris" and "Steve" therefore appear to be Defendant Chris Higgenbotham and Defendant Steve Hersem, respectively. The fact that they are FBI Supervising Special Agents supports Mr. Meshal's belief that Doe Defendant 1, who interrogated him in Kenya with Defendants Higgenbotham and Hersem, and Doe Defendant 2, who interrogated him in Ethiopia with Doe Defendant 1, are FBI agents as well.

Second, prior to initiating the first interrogation of Mr. Meshal in Kenya, Doe Defendant 1 (Tim), coerced Mr. Meshal to sign a document that notified him that he could refuse to answer any questions without a lawyer present. Complaint ¶ 60. Upon information and belief, this document was a "waiver of rights" form of the type that is often used by FBI agents. *Id.* While Mr. Meshal was detained illegally in Kenya, Defendant Higgenbotham, Defendant Hersem, and Doe Defendant 1 pressured Mr. Meshal to sign similar waiver-of-rights forms in the course of

---

[2] Plaintiff has attached the relevant pages of the transcript to this motion.

6

their multiple interrogations of Mr. Meshal. *Id.* ¶ 71. Such actions support the conclusion that Doe Defendant 1 and Doe Defendant 2, who accompanied Doe Defendant 1 in interrogating Mr. Meshal in Ethiopia, *id.* ¶ 119, are FBI officials.

Third, on or about April 20, 2009, Mr. Meshal viewed television footage and located a photograph that confirmed his belief that Tim (Doe Defendant 1) is an FBI agent. Complaint ¶¶ 142-43. Mr. Meshal was watching television when the news reported that an alleged Somali pirate was brought to New York to face federal charges. *Id*. ¶ 142. The report aired video footage of federal law enforcement officers escorting the defendant out of a federal courthouse in New York. *Id*. The report stated that the officers were FBI agents. *Id*. Mr. Meshal immediately recognized the agent to the right of the defendant as Tim. *Id*. After Tim's repeated interrogation of Mr. Meshal in Kenya and Ethiopia, Mr. Meshal had a clear memory of Tim's face and hairline, permitting Mr. Meshal to recognize him despite the fact that Tim no longer wore the beard he had maintained in Kenya and Ethiopia. *Id*. Astounded to see one of his interrogators on American television, Mr. Meshal watched the entire show. *Id*. When it was over, he changed the television channel to view additional footage of Tim. *Id*. Mr. Meshal saw video coverage of Tim escorting the defendant out of federal court on several other channels. *Id*. Each program identified the agents escorting the defendant as FBI or federal law enforcement officers. *Id*. On or about the same day, Mr. Meshal conducted an Internet search for "Somali pirate in New York" and located a new photo of Tim escorting the defendant Somali pirate. *Id*. ¶ 143. The caption to the photo also indicated that the defendant was being escorted by FBI officers. *Id*. The television footage and photo further support Mr. Meshal's good faith belief that Doe Defendant 1 is an FBI agent. The photo is attached to this motion as Exhibit 2.

These facts demonstrate that a subpoena to the FBI will likely provide information as to the true names and identities of Doe Defendants 1 and 2 sufficient to permit Plaintiff to pursue his civil rights action. Courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." *Semitool, Inc.*, 208 F.R.D. at 277. Doe Defendants 1 and 2 refused to provide their true full names or titles to Mr. Meshal while he was detained in secret and interrogated repeatedly by these defendants. Complaint ¶¶ 48, 120. Although Plaintiff has asked DOJ to provide the names and identities of Doe Defendants 1 and 2, DOJ has refused this request. In these circumstances, the limited expedited discovery requested in this motion will substantially contribute to moving the case forward by permitting Plaintiff to amend the complaint to reflect the true names and identities of two of his interrogators, Doe Defendants 1 and 2. Mr. Meshal cannot wait to take such discovery after a conference pursuant to Rule 26(f), Fed. R. Civ. P., however, because he cannot confer with defendants until they have been properly identified and served. Furthermore, Mr. Meshal cannot afford delay because the three-year statute of limitations on his *Bivens* claim will likely run within approximately six months.[3]

Plaintiff, accordingly, seeks leave to serve a subpoena on the FBI requesting the production of documents sufficient to identify the true names of Doe Defendants 1 and 2. Plaintiff would also be satisfied were the FBI simply to provide the requested information rather than producing responsive documents.

---

[3] The statute of limitations for Mr. Meshal's *Bivens* claims is three years. *See* D.C. Code § 12-301(8). He was released from custody on or about May 27, 2007. Complaint ¶ 4.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be granted. A proposed order is filed herewith.

Respectfully submitted,

/s/ *Arthur B. Spitzer*

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
　of the Nation's Capital
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
Phone: (202) 457-0800, Fax: (202) 452-1868
artspitzer@aol.com

Jonathan Hafetz (admitted *pro hac vice*)
Nusrat Choudhury (admitted *pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2500, Fax: (212) 549-2583
jhafetz@aclu.org, nchoudhury@aclu.org

Hope R. Metcalf
National Litigation Project
Allard K. Lowenstein International
　Human Rights Clinic
Yale Law School
127 Wall Street
New Haven, CT 06511
Phone: (203) 432-9404, Fax: (203) 432-9128
hope.metcalf@yale.edu

Counsel for Plaintiff Amir Meshal[*]

Dated:　November 30, 2009

---

[*] Counsel acknowledge the assistance of Tanya Abrams, Alex Iftimie, and Joseph Pace, law student interns at the Allard K. Lowenstein International Human Rights Clinic, in the preparation of this motion.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION FOR LEAVE TO CONDUCT LIMITED EXPEDITED DOE DISCOVERY has been served by first-class mail, postage pre-paid, upon

>Glenn S. Greene, Esq.
>Trial Attorney
>U.S. Department of Justice
>Torts Branch, Civil Division
>Constitutional & Specialized Tort Litigation Group
>P.O. Box 7146
>Ben Franklin Station
>Washington DC 20044

This 30th day of November, 2009. A courtesy copy has also been sent to Mr. Greene by e-mail.

>/s/ *Arthur B. Spitzer*_____
>
>Arthur B. Spitzer