UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIR MESHAL,

               Plaintiff,

v.

CHRIS HIGGENBOTHAM, et al.,

               Defendants.

No. 09-cv-2178 (EGS)

**PLAINTIFF'S REPLY TO NON-PARTY UNITED STATES' RESPONSE
TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT
LIMITED EXPEDITED DOE DISCOVERY**

Plaintiff Amir Meshal respectfully submits this reply to Non-Party United States' Response to Plaintiff's Motion for Leave to Conduct Limited Expedited Doe Discovery ("Response") (dkt. no. 12, Attachment #2).[1] Rather than permit this case to proceed in an orderly fashion whereby all defendants are named and joined from the outset, the Government argues that qualified immunity considerations require this Court to delay granting the requested relief until after the named defendants have fully litigated a motion to dismiss. Response at 2, 4-5. This novel proposal has no basis in law, would cause unnecessary and unwarranted delay, and would unduly prejudice Mr. Meshal's rights. The Government's request should be denied for the following reasons.

First, limited Doe discovery against the non-party Federal Bureau of Investigation ("FBI") serves only to bring the proper parties before the Court; it does not implicate interests protected by qualified immunity. Second, the Government offers no reason why limited

---

[1] Mr. Meshal does not oppose the non-party United States' Motion to Intervene in this matter pursuant to 28 U.S.C. § 517 for the purpose of submitting a response to Plaintiff's motion.

discovery under Rule 45 would be improper, save for vague assertions of "futility." Far from futile, this case sounds in the core areas protected by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971): Mr. Meshal, a U.S. citizen, claims he was unlawfully held and coercively interrogated by U.S. officials in violation of clearly established constitutional rights.[2] The Government's broad assertions notwithstanding, there is no blanket immunity for officials acting in the arena of "foreign affairs" or "national security." In any event, any *Bivens* defenses are properly raised by individual defendants on a motion to dismiss, and not on a limited request for Doe discovery intended merely to bring the proper parties before the Court. Third, the Government's proposed timeframe would almost certainly deny Mr. Meshal the opportunity to name Doe Defendants 1 and 2 within the statutory limitations period and preclude adjudication of their alleged violations of his constitutional rights. This Court should reject the Government's proposed delay and grant Mr. Meshal's request for limited expedited discovery as to the identities of Doe Defendants 1 and 2.

## ARGUMENT

### I. The Limited and Non-Intrusive Nature of Doe Discovery, Especially Against the Non-Party FBI, Does Not Implicate Qualified Immunity.

"A party opposing discovery bears the burden of showing why discovery should be denied." *Ellsworth Assoc., Inc. v. United States*, 917 F. Supp. 841, 845 (D.D.C. 1996). The Government fails to meet that burden.

As set forth in Mr. Meshal's motion, courts routinely order limited Doe discovery to ascertain a defendant's identity, including in *Bivens* suits against U.S. government officials. *See* Plaintiff's Motion for Leave to Conduct Limited Expedited Doe Discovery ("Motion"), at 4-5

---

[2] The Government neglects to mention that Mr. Meshal also alleges violations of the Torture Victims Protection Act, 28 U.S.C. § 1350 note, to which the Government's "futility" arguments do not apply.

(dkt. no. 10) (collecting cases). The Government simply ignores these cases. Instead, it argues that qualified immunity considerations related to the two named defendants counsel against granting leave to serve a Rule 45 subpoena on the non-party FBI for the limited purpose of ascertaining the identities of the two unknown defendants named in the Complaint. Response at 2-3. But the narrow discovery Mr. Meshal seeks in no way implicates the interests that qualified immunity protects. Those parties, moreover, will be free to raise qualified immunity or any other defenses, as appropriate, once they are properly before the Court.

Qualified immunity is designed to guard against exposing officials to "the burdens of broad-reaching discovery" on the basis of "bare allegations." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The limited discovery that Mr. Meshal requests is readily distinguishable from the burdensome, intrusive, and disruptive discovery contemplated in Harlow and in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009), the two cases cited by the Government. In *Harlow*, the Supreme Court noted that establishing a legal claim would have required the plaintiff to conduct "broad-reaching discovery," including conducting numerous depositions that would be "peculiarly disruptive of effective government." 457 U.S. at 817; *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) (recognizing that "*Harlow* sought to protect officials from the costs of 'broad-reaching' discovery," but that "neither that opinion nor subsequent decisions create an immunity from all discovery." (emphasis added)). In *Iqbal*, the Court found that the plaintiff's threadbare accusations against two supervisory defendants—the former Attorney General of the United States and the Director of the FBI—could not justify discovery that "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources." 129 S. Ct. at 1953.

By contrast, Mr. Meshal does not seek leave to conduct depositions or issue open-ended interrogatories to government officials. Indeed, Mr. Meshal does not even seek discovery here to bolster the (already substantial) factual support for his legal claims. Rather, he seeks the bare minimum information necessary to bring two of the defendants properly before this Court: their true names and identities. Motion at 1. Mr. Meshal has also made clear that he would be satisfied simply to receive this information from the FBI in lieu of responsive documents. *Id*. at 8. Requiring the non-party FBI to respond to such a narrow inquiry does not place any imposition on the "valuable time and resources" of the defendants. *Iqbal*, 129 S. Ct. at 1953. Indeed, it would have taken far less time for the FBI to provide the names of Doe Defendants 1 and 2 than for the Government to oppose the instant motion. Moreover, unlike the plaintiff in *Iqbal*, Mr. Meshal lodges anything but threadbare accusations against supervisory officials far removed from the actual conduct and activity that violated his constitutional rights. Mr. Meshal's well-pled Complaint describes in great detail the personal role of four federal officials who coercively interrogated him in Kenya and Ethiopia, and who directed, ordered, authorized, and/or actively and substantially participated in his illegal detention and rendition.

The Government does not cite a single decision in which a court has denied the limited Doe discovery sought here pending a motion to dismiss on qualified immunity grounds. To the contrary, courts in this district have consistently permitted plaintiffs to conduct discovery in *Bivens* actions for the limited purpose of identifying the defendants' identities. Motion at 4 (collecting cases). In fact, in *Bivens* itself, the district court ordered service of the complaint upon the unknown FBI agents prior to the resolution of the motion to dismiss. *See Bivens*, 403 U.S. at 390 n.2.[3] In short, the Government's request is at odds with *Bivens*, well-established

---

[3] Mr. Meshal would be content if the Government followed the same course here, effecting service on the Doe defendants without at this time providing him their identities. This approach

4

Circuit law regarding Doe discovery, and the orderly administration of justice. It should be rejected.

## II. The Government's Claim That Plaintiff's Suit is Futile Prematurely Raises Issues Appropriately Resolved on a Motion to Dismiss and, in any Event, Has No Merit.

The Government suggests that it would have "firm foundation" to quash a Rule 45 subpoena on "futility grounds" for two reasons: because of qualified immunity, and because "special factors" foreclose a *Bivens* remedy. Response at 3-4. None of the cases that the Government cites for either proposition remotely establishes that Mr. Meshal's claims are "futile."

The Government vaguely contends that Mr. Meshal's claims "inherently implicate the defense of qualified immunity" without ever affirmatively asserting that Mr. Meshal's allegations are insufficient to overcome that defense. *Id.* at 2. There is no reason to assume, at this stage, that Mr. Meshal's claims cannot survive a motion to dismiss based on qualified immunity. Officials can claim qualified immunity only where a plaintiff cannot show that those officials violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. But the Government does not assert, nor could it, that Mr. Meshal, an American citizen, did not possess a clearly established constitutional right to be free from coercive interrogations entailing threats of torture, extrajudicial detention, and unlawful rendition at the hands of U.S. officials. *See Bivens*, 403 U.S. at 389 (outlining analogous allegations of threats, force, and humiliating treatment by U.S. officials); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). Even in cases

---

would enable the Court to rule on all defendants' motions to dismiss without allowing any defendants to defeat Mr. Meshal's claims by running out the statute of limitations.

5

purportedly involving national security concerns, qualified immunity does not bar challenges to the illegal detention and interrogation of American citizens. *See, e.g.*, *Al-Kidd v. Ashcroft*, 580 F.3d 949, 981 (9th Cir. 2009) (finding that defendant has no qualified immunity from *Bivens* claims and expressing confidence that "the Framers of our Constitution would have disapproved of the arrest, detention, and harsh confinement of a United States citizen" without evidence of his wrongdoing); *cf. Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion) ("We have long since made clear that a state of war is not a blank check for the President when it comes to the rights of the Nation's citizens.").[4]

Moreover, even if the Court were ultimately to find (contrary to precedent) that the defendants were protected by qualified immunity, such a finding would not render the requested discovery "futile" because the Court might well determine that it is appropriate to decide first whether the alleged or shown facts make out a violation of a constitutional right before ruling on whether this right was clearly established at the time. *See Pearson v. Callahan*, 129 S. Ct. U.S. 808, 818 (2009) (noting that this "two-step procedure promotes the development of constitutional precedent and is especially valuable with respect to questions [like those in this case] that do not frequently arise in cases in which a qualified immunity defense is unavailable"); *see also id*. at 822 (finding that lower court judges "are in the best position to determine the order of decisionmaking" in evaluating qualified immunity issues "that will best facilitate the fair and efficient disposition of each case"). Indeed, courts in this district have followed this precise approach in evaluating qualified immunity in *Bivens* actions. *See, e.g.*, *Watts v. Williams*, ___ F. Supp. 2d ___ , No. 01-0284 (RJL), 2009 WL 3125566, at *5 (D.D.C. Sept. 23, 2009)

---

[4] In *Hamdi*, eight justices of the Supreme Court rejected the Government's vigorous contention that an American citizen could be detained by his Government without due process. 542 U.S. at 533 (plurality opinion); *id*. at 553 (Souter, J., dissenting in part and concurring in judgment); *id*. at 573-74 (Scalia, J., dissenting).

6

(considering first the threshold question of whether the facts show that any constitutional right has been violated); *CHS Indus., LLC v. United States Customs and Border Prot.*, ___ F. Supp. 2d. ___ , No. 05-2205 (GK), 2009 WL 2883027 (D.D.C. Sept. 10, 2009) (same).

Further, this case does not present "special factors counseling hesitation." To the contrary, it raises the core constitutional claims of abuse by federal law enforcement officers first recognized by *Bivens* itself. *See Bivens*, 403 U.S. at 389. The label "national security" does not automatically shield government officers from *Bivens* suits seeking to hold them accountable for violating the constitutional rights of U.S. citizens to be free from unlawful interrogation and detention. *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (holding that the Attorney General may have qualified immunity, but not absolute immunity, from *Bivens* claims with respect to actions taken to further national security and that granting immunity only as to conduct that does not violate clearly established law and will not impair the security of the nation); *Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1028-30 (N.D. Cal. 2009), *appeal pending*, No. 09-16478 (9th Cir.) (rejecting national security and foreign affairs as special factors precluding a *Bivens* action by U.S. citizen plaintiff); *cf. Hamdi*, 542 U.S. at 532 (plurality opinion) (noting in case of U.S. citizen-detainee that the proper balance between ongoing combat and due process must not give "short shrift to the values that this country holds dear"). In support of its special factors argument, the Government cites only cases in which the court refused to extend a *Bivens* remedy to lawsuits implicating national security and foreign affairs in part due to the claimant's alien status. *See Arar v. Ashcroft*, 585 F.3d 559, 576 (2d Cir. 2009) (en banc) ("[T]he danger of foreign citizens' using the courts in situations such as this to obstruct the foreign policy of our government is sufficiently acute that we must leave to Congress the judgment whether a damage remedy should exist.") (quoting *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 209 (D.C. Cir.

1985)); *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 106-07 (D.D.C. 2007), *appeal pending*, No. 07-5178 (D.C. Cir.) (same). The Government, moreover, ignores the important separation-of-powers principles undergirding recent Supreme Court decisions rejecting the Government's assertion that "national security" excludes the Judiciary from adjudicating constitutional violations, even in the case of non-citizens. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. __, 128 S. Ct. 2229, 2277 (2008) ("Security subsists, too, in fidelity to freedom's first principles. Chief among these are freedom from arbitrary and unlawful restraint and the personal liberty that is secured by adherence to the separation of powers."); *Rasul v. Bush*, 542 U.S. 466, 474 (2004). Plainly, then, the well-pled claims of Mr. Meshal, a U.S. citizen, against U.S. officials for their role in his illegal detention, interrogation, and rendition are not "futile."

### III. Delaying Doe Discovery Until Resolution of the Named Defendants' Motion to Dismiss Would Severely Prejudice Plaintiff and Waste Judicial Resources.

The Government's suggestion that this Court withhold discovery until the named defendants are served and their motion to dismiss is definitively resolved would inject unnecessary and highly prejudicial delay into these proceedings. As explained in Mr. Meshal's Motion, the three-year statute of limitation for his *Bivens* claim will likely run within the next five months. Motion at 8 n.3. Given the likelihood of an appeal from any denial of a motion to dismiss rejecting a claim of qualified immunity,[5] it is exceedingly unlikely that the threshold legal issues will be resolved with enough time remaining under the statute of limitations for Mr. Meshal to ascertain the identities of the two unnamed Doe defendants. Thus, accepting the Government's proposed sequencing would effectively result in the dismissal of this case against

---

[5] A finding that a defendant is not entitled to qualified immunity because the relevant law was not clearly established at the time of his actions is a "final decision" subject to immediate appeal. *Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).

Doe Defendants 1 and 2 by default, permanently disabling Mr. Meshal from vindicating his constitutional rights against those defendants.

The Government's request would also squander judicial resources. If Mr. Meshal prevails on a motion to dismiss by the two named defendants, this Court would have to hear a substantially similar motion to dismiss from Doe defendants 1 and 2 (assuming the statute of limitations has not run and Mr. Meshal is able to amend the complaint to reflect those defendants' true identities). Rather than risk delay that could permanently impair Mr. Meshal's rights and expend unnecessary judicial resources, this Court should grant Plaintiff's motion for limited expedited discovery and resolve any legal defenses when properly raised by the individual defendants themselves.

## CONCLUSION

Defendants—including the two Doe defendants—will be free to raise any defenses and legal arguments at the appropriate time. But there is no basis in law, precedent, or common sense, to deny Mr. Meshal's motion for limited Doe discovery that seeks only to bring all named parties before the Court so that this litigation may proceed in a proper and orderly fashion.

For the foregoing reasons, this Court should grant Plaintiff's motion for leave to conduct limited expedited discovery as to the identities of Doe Defendants 1 and 2.

Respectfully submitted,

/s/ Arthur B. Spitzer

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
Phone: (202) 457-0800
Fax: (202) 452-1868

artspitzer@aol.com

Jonathan Hafetz (*pro hac vice* pending)
Nusrat Choudhury (*pro hac vice* pending)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2500
Fax: (212) 549-2583
jhafetz@aclu.org
nchoudhury@aclu.org

Hope R. Metcalf
National Litigation Project
Allard K. Lowenstein International
   Human Rights Clinic
Yale Law School
127 Wall Street
New Haven, CT 06511
Phone: (203) 432-9404
Fax: (203) 432-9128
hope.metcalf@yale.edu

*Counsel for Plaintiff Amir Meshal*[*]

Dated:   December 18, 2009

---

[*] Counsel acknowledge the assistance of Tanya Abrams, Alex Iftimie, and Joseph Pace, law student interns at the Allard K. Lowenstein International Human Rights Clinic, in the preparation of this reply.